Good afternoon. May it please the court, I'm Nick Smith for Lorraine Pilitz. We'll start with forfeiture. The government was permitted to forfeit the Lindenhurst property which was purchased at a cost of $400,000 on proof that structured funds amounting to a fraction of the purchase price were used to purchase the home. There's two theories of forfeiture claims that allowed the government to do this. One is facilitation and the other is the so-called ink drop theory. We don't think that the structuring forfeiture statute 5317 supports either theory and let's start with the text. The text is property that is involved in the offense and so the government might say well that's very capacious language, why wouldn't that include facilitation. It doesn't because statutory terms are always interpreted in the context of the statutory framework and the context of the offense. And here we think that Stephan Casella who is an author of a leading forfeiture treatise explains why contextually and as a matter of framework facilitation doesn't make sense in the context of structuring. So is it, I mean there's sort of two different ways to articulate the argument. One is that somehow the statute here doesn't, because this provision applies to some other offenses as well right? Is it only the forfeiture provision? Your Honor, we're only making an argument based on section 5317C and its use here for structuring. Right I understand that. So it's not so much the argument that 5317C1 doesn't ever include property used to facilitate, it's that it's a nonsensical concept to describe anything as property facilitating structuring other than the structured money itself. And there might be some exceptions which would be let's say there's a structuring business and let's say the structuring business purchases property to run a structuring business out of, or purchases an automobile to run structured payments to a bank. That would arguably facilitate structuring. Right, isn't the simplest way of stating your argument that there's no way that the Lindenhurst property could have facilitated the structuring because the structuring already happened long ago? The ink drop theory is different, but the facilitation, I just don't understand how buying a property with money that is in an account that at some time previously, maybe yesterday or maybe 10 years ago, the deposits were structured that went into that. How the buying of the house could facilitate the structuring that was already over and done with is a little hard to imagine. Your Honor, that's exactly right. We don't think antecedent structuring is facilitated by the home, a posterior acquisition. It doesn't even make it harder to detect or something. I could understand an argument that the money that's already in your account, somehow the very existence of the bank account is what facilitates the structuring. I can at least get my head around that, but I have a later is facilitating the structuring that's already over and done with and it even may make it easier rather than harder. It's not like commingling. Judge, we think that's exactly right and we think it's a useful contrast with money laundering. So with money laundering, it arguably might facilitate the offense because to take the classic example of money laundering, you're commingling assets to obscure the source of them. But with structuring, the deposits are what they are. In fact, that's exactly how the government made its tracing argument in this case. We can clearly establish what the structured assets are and we know what percentage of the purchase price of the home those are. So we know in this very case that a posterior purchase property would not hinder the government's ability to show structuring. So we don't want to use up all the time on this. In terms of the so-called ink drop theory, I just want to understand your position. Is it your position that nothing about the Lindhurst property can be, you're just arguing for a percentage allocation? We're only arguing for percentage allocation and our understanding of what we mean by ink drop would be one argument the government's making here that any asset that's traceable to forfeitable property is forcible. And what the government means by traceable is if any portion of a tainted asset enters a property or an account with untainted assets, the entire account becomes forfeitable by virtue of that entry of the tainted asset into the account. That's ink drop. But what traceable means is not defining the type of property. It's defining the relation that property must have to the offense. So when the statute says forfeitable property is property involved in the offense and any property traceable to, traceable is referring to what the government must do to show a relation between the offense and the property. It's not defining the quality. But often traceable is interpreted even more strictly than that. And you're not making, I think, that argument. In other words, you're not saying that they would have to show money being fungible. They could hardly ever show it. That the money that was structured is the money that was used. You're saying a certain amount of the money that was available for use here was structured and that's good enough for the proportionate share. That's correct, Your Honor. We're not debating that point. And just to briefly address Verone, the government's argument, this court has already decided this issue in Verone. In Verone, the defendant's argument was that no forfeiture statute permits any kind of forfeiture except an instrumentality. That was the breadth of the defendant's argument there. We're not arguing that here. We're not even arguing that structured cash is an instrumentality. We wouldn't understand why it would be an instrumentality of the offense. And then the government argues that this court cited to Schlesinger, the Schlesinger case in Verone. But the court, by citing Schlesinger, wasn't purporting to address the issue of whether facilitation works in the context of 5317. It was the civil forfeiture statute that Schlesinger was addressing. And this court in Verone was only citing to Schlesinger to merely make the point that the forfeiture statutes are limited to instrumentality forfeitures. Because in the civil forfeiture context, there's other kinds of involvement. Can I ask about the standard of review here? Because to some extent, you have your jury verdict that says this is forfeitable, and the jury was instructed a certain way. And your argument is that the instruction was plain error. It has to be plain error, right? Because that instruction was not objected to. At that stage, Your Honor, yes. But there was another stage when the district court entered a forfeiture order, and the facilitation theory was objected to. The issue was preserved there. So I think this is just kind of a six of one way and half a dozen of the other. If we look at it from the perspective of the jury instructions, then we can see there would be a plain error standard. But if we look at it in terms of when the forfeiture order was entered and objected to, that's de novo. Although I suppose there's a third way of looking at it, which is you have an ineffective assistance of counsel claim. And so then the question would be whether it was deficient performance to fail to object, which may or may not be higher or lower than plain error. But it's a different standard. It's a different standard, and we think that it's got to be a comparable standard. Because the only way for a defendant to raise a forfeiture issue is through ineffective assistance on direct appeal in this context. It can't be raised collaterally. Right. We can't put this off to some 2255 because there is no 2255 available because you're not challenging the custody. And then if that's the case, why would the standard of review be materially different if it's the same? I don't know when counsel changed or whatever, but you're saying that there still was an opportunity, putting aside what happened at the jury instruction. There was still an opportunity to raise this issue below, and it was raised. It was raised at the point when the forfeiture, when new counsel was objecting to the forfeiture order at sentencing. The facilitation objection was raised there. It was not raised in the charge. And the ink drop objection wasn't also raised there. Was not raised at sentencing. But as as we've pointed out already, ink drop is a kind of concept that folds into a lot of other arguments we're talking about. In the proceeds context, courts have routinely objected or refused to accept the ink drop theory here, which is what we've talked about. And it's never been applied in the context of structuring. That is where it's kind of a bootstrapping. You know, one drop in the account of tainted assets makes, turns the untainted assets into all forfeitable property. I'm sorry, just one last question and then I'll be absolutely done. You've talked here only about the Lindhurst property. You haven't talked about, that doesn't mean you're waiving anything, so I want to know whether you're also saying, talking about the bank accounts in this, because the bank has seemed to me to be different in that the amount of money in the bank account at the time that the forfeiture takes place is less than the total amount of the structured transactions. Are you trying to extend this tracing argument to say, well, you have to show which first in, first out or something? Or in other words, how does, how if at all, does the argument that you have over the Lindhurst property, where you're saying we, the government could forfeit the proportionate share that came from forfeited funds, wouldn't that also, of necessity, that position mean that the bank accounts go? Judge, we think the charge was wrong. So when the charge instructed the jury that they could forfeit the entire bank accounts because some, the prosecutor argued to them, some portion, you've been shown that some portion of these accounts includes structured assets, therefore you can. But you're saying you get to raise it again at the sentencing and say, well, no, the, even if the instruction wasn't objected to, the court can still fix that. But the court can't fix this. I mean, this is clearly, it's hard for me to see how there could have been any kind of other jury verdict under a proper instruction with respect, what you contend is a proper instruction with respect to the bank accounts. Well, because the jury could have been confused about the legal, the law, the applicable law. Yeah, how could the jury, though, if instructed correctly, have possibly reached a conclusion that you are essentially saying is, as a matter of law, the right way to handle the lenders property, which is, you don't have to find dollar for dollar. This dollar went in here and came out there and maybe the structured money was used for an earlier purchase or something like that. If you don't have to do that, why on earth would it be necessary to say, well, there's a problem with forfeiting bank accounts into which structured funds were put in a number that exceeds the value of what is in the account at the time of the forfeiture? What possible theory could the jury, what possible theory could a jury properly instructed not have returned a verdict of forfeiture with respect to the bank account? Because, Your Honor, there are so many accounts at issue that involve structuring that I don't know if, let's say there was a total number of structured assets of $300,000, but we can't show that for the particular accounts involving the forfeited assets here, that those structured funds went to those accounts. So, we know, I mean, so that's a tracing issue. By definition, a structured deposit is a deposit to a particular account. That's correct, Your Honor. So don't we know how much money was put into each account by structured transactions? Your Honor, my colleague might be able to address that a little bit better, but I don't know exactly whether, I'm just hesitating here because I'm not exactly sure on that. These accounts included a lot of not structured deposits as well. That was the defense. So, if the evidence was that for any one of those accounts, the structured money that went in amounted to $10,000, but the amount of the account that got forfeited at the end of the day was $30,000, would you be arguing that that needed to be parsed out? Or would you be saying, well, we know that the total structured funds were $363,000, so it's okay to grab these three bank accounts without regard to whether there was structuring into each of those individual accounts? Your Honor, I think it's the former because this isn't a substitute assets argument. My question is a different one. My question was, if it's shown that $30,000 of structured money went into this particular account, and at the time of the forfeiture, this particular account only contained $10,000, would you have an argument? Your Honor, I think that's a tracing issue. So, I believe that's a tracing issue. Well, when you say it's a tracing issue, then this again gets me back to the question, you seem to have given that away with respect to the Lindhurst property by saying that somehow we can tell how many dollars of what went to purchase the property came from structured money. The government's proof on that point, Your Honor, is that they traced, three checks were used to purchase the Lindhurst property, and they traced structured funds to the creation of those checks. That's the point I was making, Your Honor, that we're not, that we're saying in theory, there's nothing legally incorrect with making that forfeiture argument here. I think it's a slightly different issue when we're talking about bank accounts. Did the government present comparable evidence as to how many dollars got structured, structured dollars went into each of those accounts? Yes, Your Honor, and I think my colleague will address that, but to be clear with the court, we're really focusing on the property here, than digging into the weeds of these three accounts. But we still have to resolve all the issues that you raised, I'm just trying to understand what issues you're raising, why you're raising them, and how you're raising them. I think I have your answer. So, just a couple more very brief points. The government argues that there's this standard called but-for forfeiture, that's acknowledged in some cases where, which is another way of saying the ink drop theory, so it's, the government argues that but-for the tainted asset, a larger property or asset could not have been acquired. So here they're saying, if structured funds hadn't been used to make $100,000 of payment on the $400,000 home, the defendant wouldn't have had the assets, the total amount of money to purchase the home. But that's different than the ink drop theory though, because the whole rhetorical appeal of an ink drop is one drop. And that theory, if allowed, would say if a single dollar goes into the property, the but-for standard would be a rather different standard. That would be a standard that says, you could never get the, I'm having trouble figuring out how you actually do this in reality, but the theory is quite different. The theory would be that this is so substantial a portion of the purchase price that no one would have been able to get a mortgage, no one would be able to buy that. Two things, or three things, Your Honor. That's only been accepted in RICO cases, we believe. That's never been accepted in a structuring case, because the implications are pretty vast, the consequences. Two, the government didn't ask for that instruction, that wasn't in the charge. Three, there is no evidence that but-for, the structured funds in this case, PILOTs could not have obtained a loan, gotten a different mortgage, et cetera. So there's no factual, you know, there's no evidence in the record that would establish but-for in this case. I hear the answer. Okay. And then, Judge, on tax loss, the government's response to this point on the restitution guidelines is that the sentencing counsel was in a really big bind. If he had presented, if he had really pushed the deductions and, you know, other credits issue for PILOTs at sentencing, she could have been exposed to additional charges that he had a Hobson's choice. This is really kind of beside the point. If we look at the record at sentencing, we'll see the district court just did not address the defense's point that her tax losses, the tax loss could not have been as large as nearly $400,000 because of deductions and credits that her accountants didn't properly account for. That was, that's not waived. That's the defense counsel made this in the sentencing memo. He said, we disagree. The case would be very different if the judge had said, I've looked at this, it entails an incredibly complicated reconstruction of tax returns that were fundamentally fraudulent in the first place and including trying to figure out what the deductions would be in a business that had a lot of cash flowing through it and a lot of funny things happening and that's just too much trouble and I don't think we need to do that because there's an alternative way of calculating. At a minimum, we would have a very different case. But the judge did not say anything like that. Is that a fair statement? Well, Judge, I think it's fairer to say the judge didn't say anything about it. So there was, it was briefed in the sentencing memo. In other words, what you are asking for now is just the opportunity to get an explanation from the court. Once the court gives an explanation, in order to prevail on the argument you're making, I think I'm trying to help you, you don't have to establish that this was a massive injustice and that you've proven that there's no tax loss of the magnitude that's here. You just want to, we would have a different case if the judge had made an explanation. Absolutely correct, Your Honor. It's a procedural unreasonable disargument and that alone. There's no argument on the substance. It's about the inadequate explanation.  Not the underlying correctness or incorrectness of the amount. Correct. And the support for that, that there might have been an actual difference in the guidelines calculation is the testimony of a couple witnesses who said that actually she would have owed nothing in taxes in these years. I don't know if nothing is the right answer, but something less than $400,000. It's similar in tax cases and that always seems to be what the expert comes in afterwards and says the tax loss would be, but I hear your point. And so unless the court has any other questions, I will sit down. Thanks. We'll hear from the government. Good afternoon, judges. My name is Burton Ryan. I was one of the trial assistants below in this case. The United States respectfully submits that the appellant Lorraine Pilitz's appeal should be rejected because she has failed to demonstrate any error, much less plain error, in the district court's jury charge, restitution order, or sentence, and has failed to demonstrate that she received ineffective assistance of counsel. To demonstrate plain error, Pilitz is required to prove that there is binding precedent that mandates reversal. However, Pilitz has not cited any binding Second Circuit or Supreme Court decision that would support her assertion, raised for the first time on appeal, that the district court's jury instructions on the criminal forfeiture were plainly erroneous. Can I ask a question about that? Because I was trying to figure, I was looking at that same question that you raised. I was reading this court's decision, the Bianco Cafeterio case in 1996, different forfeiture provision, different statute. It was 881A6, but it used the same language, all proceeds traceable, which is the language we're using here. The court talked about the scenario, the easy case. The easy case is you have an account with the drug proceeds, everything in there is drug proceeds, and that's easy. Then the court talked about commingled accounts.  The implicit in the court's analysis is, of course, you can't forfeit the entirety of those commingled accounts. It offered three different methodologies for how you might structure your forfeiture analysis so that the money that you're forfeiting is properly traceable to the crime. Isn't that a pretty clear statement from the Second Circuit, that the so-called ink drop theory is not a viable theory, at least when the language of the forfeiture statute says traceable to? Well, I don't believe, Judge, that the ink drop theory is what we followed here. We think that both the fact that the property was involved in the crimes, as a matter of fact, the entire conduct of the defendant was in being able to structure $362,000 through various accounts. The entire purpose was to purchase various assets for her business on various occasions. In this occasion for the building, what she did is she took the $173,000 of structured money, mixed it in with diverted checks from the business, which were also put into those accounts, and created the checks that made the down payment and the purchase of the property. So let me make sure, I want to break down your answer. So you're not contending that the presence of any structured funds in the purchase price of the house is enough to support forfeiture of the house as a whole? What happened here is the checks that were used to purchase the property involved commingled funds with structured funds. Those checks are forfeitable in total, and those checks were used to purchase the property and trace to the property, and therefore the property could be forfeit in total. So again, I'm looking at the evidence, and it looked like about $173,000 or something.  So you're not saying that the entire value of the house is forfeitable, I guess, presumably? No, I think the entire value of the property is forfeitable based on the fact that they commingled it into those checks that were used for the purchase of the property, which was traceable. Isn't that, I'm sorry, I guess I misunderstand what the ink drop theory is. I thought that- The commingling occurred in the transfer of the structured money with the other money in the accounts into the checks. Oh, I see. So the checks themselves were forfeitable, and we could have stopped right there. But in fact, what they did was it became traceable as proceeds of the structuring once they moved it on further down the line into commerce. I think I'm still misunderstanding. Let's assume that there's an account, and there's $100,000 in the account. All of it is money that's not been reported, and it's part of this cash business, but there's $100,000 in the account, but there's only $20,000 of that were deposited in a structuring manner. Is it your view that once that structured money gets into the account, the account in its entirety is subject to forfeiture? And I think that's the ink drop theory. I don't, Judge, I don't think it's a either or situation. It's really, because you take a look at, let's go back to what counsel relies upon, is Judge Amon's decision in Eastern Bank where she took a look at money that came into an account, and it was a civil forfeiture case where the government, the Eastern District, tried to take the whole account. But the judge, though she accepted the facilitation theory of being able to take the money in the account should it be used to help conceal the structured money or to be able to hide it in some way, found because that there was a currency transaction report filed that there was no concealment on that particular deposit, and therefore she limited the forfeiture merely to the amount of the structured amount and not to the other monies that were in the account because there was no efforts at concealment. Here, there's efforts here and in Elphi, which this court decided in 2008, there's tremendous efforts at concealment, and that was what gave this court the ability to broaden the amount of the forfeiture and take all the money in the account. So let me, can I ask you about that? Sure. Because, so, and it seems like now you really are saying we're not talking about traceability at all, we're talking about facilitation. That's really where the action is in this conversation. But here, because of the nature of how she, what she did and how she did it, we have both facilitation and tracing. We certainly have involved, and we have involved in because the entire purpose of her structuring crime was to purchase the property. But that suggests that the property, that the motive for which someone commits a crime, if the motive is to ultimately, you know, buy a business or something, that then the business becomes forfeitable because that was the goal. Is that, could that possibly be the law? Well, that the idea that I'm trying to enrich myself by committing X, Y, Z crimes that lead to forfeiture of proceeds, but because my goal is something. As we know, forfeiture is the penalty for the commission of the crime.  And such as, just as the court has a wider expanse in defining, in sentencing, in determining the penalty, you can take a look at the purpose and the nature of why the- Yeah, but forfeiture is not a discretionary thing, it's a mandatory thing. It is mandatory, but the scope of it is determined on the factual findings by the court as to what the effect of the crime was. But we're talking about the legal basis. And I just want to get back to very simple stuff. And I think Judge Robinson was asking you this question, and I think you, with respect, did not answer it. If I have a bank account that has $100,000 in it, that $100,000 may be the proceeds of a crime. Maybe in this case, all of Ms. Pillitz's money was the proceeds of tax evasion and trying to avoid paying taxes on her property, but that's not forfeitable. So I have $100,000 that is not forfeitable, it sits in this account. I then make three structured deposits of $9,999 into that account. The government immediately pounces. How much can it forfeit? The whole $130,000 or only the $30,000 that was used? It depends on the nature of the forfeiture and how it was used in connection with that account. It's not used at all. It's sitting there. I have money in the account. No, I understand that, but let's go back to take a look at their reliance on... Is there a reason why you can't answer my question? Well, Judge, it depends on the circumstances upon which the money was structured into the account. The circumstances were they sent three smurfs with $9,999. Right, and the question is, were there efforts at concealment? Of course there's concealment. That's the whole point. The whole point is if you put that money into the account as a $30,000 deposit, there would have to be a cash transaction reporting to happen. You do it the other way to avoid that happening. Exactly, and Judge, as the cases have indicated, when the government can show that the presence of clean money somehow makes the offense itself more difficult to detect... That would be absolutely true if we were talking about money laundering. No, but that is also the standard that we believe should apply in connection with structuring. Excuse me, can you tell me exactly how that would function? Excuse me, can I finish the question first? Explain to me how that theory could apply, that the presence of my $100,000 in the account before the smurfs come and put the money in makes it harder for the government to detect that there are three deposit slips for $9,999 that came on the same day and no currency transaction report was filed. How does the presence of the $100,000 make that harder to find? In this court in Elphi, and in the facts of this particular case, in Elphi there was 13 different bank accounts being used in which the structuring was between all those accounts mixed in with checks and everything like that. The combination and the pattern of being able to distribute the money in that area with the other monies helped hide the structuring because until you could take a look at all of the entire scope of what the defendant was doing in the multiple accounts, there would be no way for you to identify that money was actually being structured because you'd have to know how many accounts were being affected and what the days were in which the money was being split up to avoid the $10,000 limit. That's exactly what happened here. And some of the accounts were in the name, were in relatives' names, not the defendant's  Correct, it was, it would be. Can I just ask a quick question about the standard of review? My colleague asked her adversary about the standard and he said there was not an objection to the jury instructions, so plain error, but there was an objection at sentencing to the forfeiture itself, and that's sufficient to preserve the objection to the- But in the motion to set aside the verdict, counsel did raise the issue as to the scope of forfeiture. So why is it correct that plain error is the proper standard of review here? Because that's their complaint relative to the issues of the attorneys not objecting to the charge to the jury. The charge to the jury is clearly, can only be addressed through plain error because the objection on the Rule 29 motion or the Rule 33 motion really had to do with the legal basis for forfeiture. And that was something that was, the judge applying Verone, applying Costello, determined the charge was proper and that the jury's determination was properly based in the facts that were available for them to make a determination. As to the sentencing judge, I'll just claim there that also there was no error that should be acknowledged that the court used appropriate discretion in dealing with the defendants. They had one year between the verdict and the sentencing, at which time both the parties and the new counsel were very aware that the IRS was reviewing the trial record for the issue of taxes. The defendant was invited to submit financial information for the pre-sentence report or for the tax calculations. She chose not to do that. She stubbornly declared at sentencing that, in fact, she did not work with the court or with the probation. She only worked with the IRS, where she made new filings that were not shared with the government or supported. There was no evidence for us to make a determination of additional deductions and all the deductions that were on her tax returns that had been filed originally were credited for her. None of them were challenged. So defense counsel did not commit any ineffective errors by failing to go forward and object to a FATICO hearing. He was able to review the tax calculations and accepted it for the purposes of sentencing, which was $140,000 less than the guidelines permitted. And we therefore think that the judgment in total should be affirmed and I would otherwise rest on my grief. Could you just clarify for me a little bit what happened? I thought the argument was being made and could be inaccurate factually. I thought the argument was that they submitted to the court amended tax returns. They admitted a cover sheet indicating that the IRS owed her numbers. There was no supporting documentation concerning what deductions there were or what the basis of the deductions was. So the substantive argument about this is that the evidence that was presented was insufficient to support any kind of the sort of convulsions that the defense presented. And that was argued at sentencing and the judge did note that she had been requested to cooperate with probation and provide financial information, which she declined to do. So with respect to the question of the judge failing to consider that or to explain why that was insufficient, you're suggesting that the judge did make an explanation as to why this evidence was being rejected? I believe the explanation would be that her lack of cooperation gave them nothing. Undermined the credibility of any of that. Correct. And then the court goes on to apply the default in the guidelines. That's correct, Judge. I think the judge did address the issues that were presented to her in an appropriate way so that it was understood by all the parties as to what occurred. Thank you. Thank you. Just two very brief points on tax loss. Sentencing counsel for Ms. Phillips represented to current counsel that it was more than the cover sheet that was submitted to probation. There were other tax records that were submitted to probation. Well, okay, that's interesting. But what is the state of the record with respect to what was addressed to the district court? That's the very next point I was getting to, Your Honor, which is that in Phillips's sentencing memo, she references testimony at trial from two witnesses called Uppen and Kovner, who provided evidentiary support for Phillips's argument that her tax loss should be less than the $300,000 it was assessed at, at sentencing. That wasn't addressed by the district court. So this judge- That was at the trial? Why was that? Just out of curiosity, was that relevant at the trial, what the amount of the tax loss was? Well, the government was arguing that because this wasn't a tax evasion case, that it wasn't relevant and this testimony shouldn't get in, but it did. That issue was debated and resolved at trial. At sentencing, Phillips argues to the district court that the court should consider that testimony in deciding what tax loss is, but that's in the sentencing memo. But there's no colloquy about that. And the district court did not address that? Did not address that. And so that we were resisting this suggestion that the issue just wasn't even raised by the defense or it has something to do with tax cover sheets. That's not the case. The government's pointing out that the IRS gave Phillips credit for some of these apparent deductions and credits, but Phillips didn't receive that analysis. We don't know how IRS incorporated the testimony of Kovner and Upin from trial into its tax loss calculation. So, I mean, on that fact alone, this is an issue that wasn't addressed in the district court. Unless the court has any other questions, I'm finished. Thank you. Thank you both. We'll take it under advisement. Thank you.